No. 102,122

MARVIN HANSFORD, *Appellant*, v. SILVER LAKE HEIGHTS, LLC, *et al.*, *Appellees*.

(280 P.3d 756)

Opinion filed July 13, 2012.

*Robert E. Keeshan*, of Scott, Quinlan, Willard, Barnes & Keeshan, LLC, of Topeka, argued the cause and was on the brief for appellant.

No appearance for appellees.

The opinion of the court was delivered by

ROSEN, J.: Marvin Hansford was named and served as a defendant in a real property partition action in Shawnee County. Although he did not respond to the partition petition and failed to claim that he was the sole owner of any of the legally described property, he later sought to establish a claim to a portion of the partitioned land against its purchaser. The district court granted the purchaser's motion for summary judgment, and the Court of Appeals affirmed in *Hansford v. Silver Lake Heights*, No. 102,122, unpublished opinion filed June 4, 2010. We granted Hansford's petition for review, and we affirm the conclusions of the courts below.

The record shows that Hansford's grandfather acquired the northeast fractional quarter of Section 3, Township 11 South, Range 14 East of the 6th P.M., in Shawnee County (the east land) in 1929. He deeded the east land to four relatives, including Hansford's father, in 1939. A small portion of that land was later sold to a water district for a water tower.

In 1947, Hansford's father acquired 50 acres of the land adjacent to the east land. He later sold 40 acres of the land, retaining 10 acres that abutted the east land to the west and on which a house was located (the west land). In 1962, following the intestate death of Hansford's father, the heirs conveyed full title to both the east and west lands to Hansford's mother, Viola Hansford.

On January 14, 1997, Viola deeded the west land to Hansford. The deed described the property as:

"The East 10 acres of the East 50 acres of the Northwest quarter of section 3, township 11, South range 14, East of the sixth P.M., Shawnee County, Kansas."

On January 15, 1997, Viola deeded the east land to Hansford and other relatives as tenants in common. A barbed wire fence lay on the land that the conveyance deeds described as part of the east land, near the boundary with the west land. Hansford maintained the fence and stored personal property and ran cattle on the land west of the fence from 1997 on. The fence ran obliquely to the

legal property boundary so that it varied from 58.3 feet to 78.6 feet east of the boundary line.

Viola died on March 12, 2005. Then one of the tenants of the east land, Ora May Bateman, died, and, on November 8, 2006, the executor of Bateman's estate filed a petition to partition the interests in the east land. None of the other tenants in common, including Hansford, filed responses or entered an appearance and, on March 2, 2007, the district court entered an order finding that the defendants owned the east land as tenants in common and ordering partition of the property. The partition petition and orders explicitly described the property at issue as:

"The Northeast Fractional Quarter of Section 3, Township 11 South, Range 14 East of the 6th·P.M., Shawnee County, Kansas, EXCEPT a tract beginning at a point on the North line of said Section 3, which point is 3015.00 feet East of the Northwest corner of said Section 3; thence South at right angles to said North line of said Section 3, a distance of 217.80 feet; thence East parallel to the North line of said Section 3 a distance of 200 feet; thence North at right angles to the North line of said Section 3, a distance of 217.80 feet; thence West along the North line of said Section 3, a distance of 200 feet to the point of beginning ."

The water district owned the property that was excepted in the metes-and-bounds description.

After the time for any of the tenants in common to assert a claim to the partitioned property had passed, the district court entered an order directing that the east land, as described above, was to be sold at auction. On August 15, 2007, the auctioneers filed a report certifying that they had sold the east land, as described above, to Silver Lake Heights, LLC, for $372,900. On the same day, the district court entered an order confirming the report of sale and ordering the sheriff to convey to Silver Lake Heights a deed for the above-described property. On August 27, 2007, the district court entered an order confirming the deed conveying the east land to Silver Lake Heights.

On September 18, 2007, the district court entered an order allowing partial distribution of the proceeds of the sale, but it withheld Hansford's share of about $83,000 until he removed his personal property, including cattle, from the real estate and paid Silver Lake Heights for related expenses. He moved his property from

the east side of the fence to the west side of the fence, and Silver Lake Heights apparently found this relocation adequate until it conducted a formal survey a few months later. On October 25, 2007, the court entered an order of final distribution, finding that Hansford had removed his cattle and other personal property from Silver Lake Heights' land and ordering distribution of Hansford's share of the sale proceeds.

Silver Lake Heights subsequently ordered a survey of the land that it had purchased, which revealed that the legal description contained in the deed of sale included the fence and a strip of land west of the fence. On May 15, 2008, Hansford filed a petition in Shawnee County District Court seeking to quiet title and to enjoin Silver Lake Heights and others from trespassing and removing property. He alleged in the petition that the strip of land west of the barbed wire fence belonged to him through theories of adverse possession and boundary by agreement.

Following limited discovery, Silver Lake Heights filed a motion for summary judgment. Hansford responded and included a cross-motion for summary judgment. The district court held that summary judgment in favor of Silver Lake Heights was proper because Hansford had failed to assert his claim during the partition action and was consequently barred from asserting the claim in a collateral action. Hansford appealed, and the Court of Appeals affirmed. *Hansford*, slip op. at 3-6.

*Discussion*

Our standard for reviewing an order granting summary judgment is de novo. *In re Tax Appeal of LaFarge Midwest*, 293 Kan. 1039, 1043, 271 P.3d 732 (2012).

" ' " 'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case.

On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' [Citation omitted.]" *Mitchell v. City of Wichita*, 270 Kan. 56, 59, 12 P.3d 402 (2000) (quoting *Bergstrom v. Noah*, 266 Kan, 847, 871-72, 974 P.2d 531 [1999]).' *State ex rel. Stovall v. Reliance Ins. Co.*, 278 Kan 777, 788, 107 P.3d 1219 (2005)." *Smith v. Kansas Gas Service Co.*, 285 Kan. 33, 39, 169 P.3d 1052 (2007).

See *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 220 P.3d 333 (2009).

Partition actions are governed by K.S.A. 60-1003. K.S.A. 60-1003(b), relating to petitions in partition actions, reads:

"The answers of the defendants shall include allegations of the nature and extent of their respective interests. They may also deny the interests of any of the plaintiffs, or any of the defendants. Any claim of adverse possession shall be affirmatively pleaded and the burden of proving the same is on the defendant."

This court has previously noted the plenary scope of partition actions: "A partition action is particularly designed and suited to settle *any and all* rights of cotenants in and to the property involved. The district court in such a proceeding has full and complete power to adjudicate *every* legal and equitable right of the parties to the litigation." (Emphasis added.) *Jones v. Anderson*, 171 Kan. 430, 435, 233 P.2d 483 (1951).

This court has recently considered the extent to which collateral actions may undermine the finality of a partition action.

When the petition in a partition action identifies the subject property by its legal description without noting any exceptions or reservations, the parties are on notice that *the entire estate* is involved. *McGinty v. Hoosier*, 291 Kan. 224, 241, 239 P.3d 843 (2010). A partition action passes *all* of the grantor's estate unless the intent to pass less is expressly or necessarily implied in the terms of the grant. *McGinty*, 291 Kan. at 241; see K.S.A. 58-2202. The failure of a party to take a direct appeal challenging the form of the pleadings, *the description of the property*, or the order of the sale precludes that party from making a collateral attack on the judgment in the partition action. *McGinty*, 291 Kan. at 241; see *Jones*, 171 Kan. at 435-36.

The petition and deed in the present case identified the subject property by its legal description and made no note of exceptions or reservations. As a general rule, the boundary line between adjacent properties is determined by referring to the deeds and the intention of the parties as reflected by the description in the deeds, and when there is no ambiguity in the descriptions they are to be taken as the conclusive evidence of the intention of the parties. When the property descriptions are unambiguous and are set out in the deeds, a survey is all that is needed to establish the true boundary. *Fritzler v. Dumler*, 209 Kan. 16, 21-22, 495 P.2d 1027 (1972). In the absence of fraud or mutual mistake, a transfer of real property based on described boundaries conveys the land within those boundaries, even if that tract contains a different amount of acreage than one of the parties may have understood. *Maxwell v. Redd*, 209 Kan. 264, 267-68, 496 P.2d 1320 (1972).

Hansford failed to assert an interest in the described property before the district court, and he failed to take a direct appeal challenging the description of the property. The partition action concluded with a court-ordered auction, a court-approved sale, and a conveyance of deed to Silver Lake Heights, all using the same legal description, without Hansford asserting any interest in the subject property. He is therefore precluded from making a collateral attack on the judgment in the partition action.

Hansford nevertheless contends that he established a boundary by agreement with his mother before she conveyed the east land to the tenants in common. Can a boundary by agreement, if such an agreement existed, defeat Silver Lake Heights' claim to the strip west of the fence?

K.S.A. 60-1003(b) requires the defendants in a partition action to include in their answers "allegations of the nature and extent of their respective interests." If Hansford had an interest in the east land by virtue of a boundary by agreement, then the statute governs that interest and required him to answer the petition.

There is good reason to require a party asserting such an interest to plead that interest in the partition action.

If a party may raise a boundary by agreement at any time, even after the partition action is concluded, then Hansford could have

waited a full 15 years to assert his interest. At that time, Silver Lake Heights would have been able to assert a defense of adversely possessing Hansford's land under K.S.A. 60-503; up until that time, Hansford would be able to reclaim the property to the detriment of whatever development Silver Lake Heights carried out on that land.

Furthermore, the partition statute provides for land valuation by appointed commissioners prior to sale of the partitioned land. K.S.A. 60-1003(c)(2). A sale of the land must be for no less than two-thirds of the value set by the commissioners. K.S.A. 60-1003(c)(4). If a party waits until after the sale has been consummated to challenge the description of the property, the entire partition action may be undermined—the commissioners will have valued the land based on the legal description, and it is easy to imagine that removing a portion of that land from the appraisal may dramatically diminish the accuracy of the valuation.

For these reasons, as well as because of the express language of the partition statute, we reaffirm the rule articulated in *McGinty* and *Jones* that the failure of a party to take a direct appeal challenging the description of the property in a partition action precludes that party from making a collateral attack on the partition orders.

The district court and the Court of Appeals held that summary judgment was proper. Hansford contends nevertheless before this court that his factual claim of a boundary by agreement not only defeated summary judgment for Silver Lake Heights but mandated summary judgment in his favor because Silver Lake Heights did not contest the existence of a boundary by agreement in its pleadings.

It is not enough that a fact be disputed, however, to defeat summary judgment. That fact must be material to the conclusive issues on appeal. See *Osterhaus v. Toth*, 291 Kan. 759, Syl. ¶ 1, 249 P.3d 888 (2011). Because this litigation is governed by the statutory requirement that a defendant raise an asserted property interest when answering a partition petition and by the rules set out in *McGinty*, 291 Kan. at 241, and *Jones*, 171 Kan. at 435-36, the facts

that Hansford wanted the district court to consider were immaterial.

Hansford contends that, the language in the partition orders and conveyance deed notwithstanding, he already owned the land west of the fence when the partition action took place. Because a partition action does not expand property rights but merely unifies them, the partition orders and deed of sale could not have included property not owned in common. See *In re Moore*, 173 Kan. 820, 827-28, 252 P.2d 875 (1953) (deed cannot convey property over which district court did not have jurisdiction).

The problem in the present case is one of timing. There is little doubt that Hansford could have presented evidence supporting his claim of boundary by agreement if he had asserted that interest in an answer to the partition petition. Had he done so, the existence of an agreement to make the fence the property boundary could have been highly material, and the executor of the estate would have been required to rebut his claim. Affidavits and the testimony of Hansford, neighbors, and surveyors might all have been relevant to sorting out a disputed factual issue.

But Hansford waited until after the property, including the strip he now claims, had been partitioned and sold to assert his interest. This is not a case of a mistaken boundary line. It does not involve some neighbor who will suddenly lose a strip of land because the deed inaccurately described the borders of the partitioned property. This is a case in which one of the tenants in common, one who was on notice that the property which has been subject to the same description over the course of decades and in several conveyance deeds, was going to be sold. If Hansford was going to claim an exception from that property, he had to do so in the partition action prior to the sale.

Under analogous circumstances, a federal district court has noted that equities operate against a party who knows of his or her claim to a property interest and who stands silent during the partition action:

"Here, however, [defendant] Midgett wore both hats. In her capacity as a co-tenant, she was made a party to the partition proceeding. This provided her with the opportunity to contest the survey as erroneous in her capacity as an adjoining

landowner. At that time, she could have asserted that the boundaries were wrong and that she owned a portion of the surveyed tract outright. Instead, she accepted the money, and thereby benefited from the sale of the land *as described in the deed*. She cannot now avoid its burdens." *Davis v. Scarborough*, No. 89-37-CIV-2, 1991 WL 335374, at °5 (E.D.N.C. 1991) (unpublished opinion), *aff'd* No. 91-1758, 1992 WL 48015 (4th Cir. 1992) (unpublished opinion).

Like the defendant in *Davis*, Hansford wore multiple hats. He was the adjoining landowner with a putative interest in the property west of the fence line. He was also a cotenant of the property that included the fence, and he benefitted from the sale of that property. By standing silently while the east land was partitioned and sold, he benefitted from the sale; he then sought to benefit from his silence by bringing an action against the purchaser that also undermined the interests of the other cotenants. It was reasonable and lawful for Silver Lake Heights to rely on public notices and deeds of sale; it had been given no reason to suspect that a private agreement between a cotenant and a party not involved in the partition action might have reduced its interest.

Hansford also contends that by paying out the final sales proceeds, Silver Lake Heights equitably conceded that it was only buying the land east of the fence. And by the time Silver Lake Heights conducted the survey, Hansford claims Silver Lake Heights was estopped from asserting a claim to any land west of the fence.

Hansford's argument is essentially one of adverse possession, a claim he has abandoned. He contends that he moved his personal property and cattle from one part of Silver Lake Heights' land to another part, either under a claim knowingly adverse to Silver Lake Heights or under a belief of ownership. When Silver Lake Heights did not immediately contest that relocation and instead distributed sales funds to him, he maintains, it forfeited its right to that land, even though the decision was based on a mistake and was rectified within a few months. The only thing missing from this scenario to turn it into an adverse possession argument is the 15-year requirement of K.S.A. 60-503.

Hansford suggests that there is another kind of adverse possession that does not rely on the 15-year statute of limitations. Under

this theory, the adverse possession becomes effective immediately upon a party taking some kind of action inconsistent with possession.

In order for estoppel to bar property claims, there must be a false representation or concealment of material facts; the material facts must be misrepresented or concealed with knowledge of the actual facts; the party to whom the representation is made must be without knowledge or means of knowing the real facts; there must be an intention that the representation will be acted upon; and the party to whom the representation is made must rely on the representation or act upon it to that party's prejudice. *Place v. Place*, 207 Kan. 734, Syl. ¶ 4, 486 P.2d 1354 (1971).

Several elements of estoppel are missing in the present case. It was not Silver Lake Heights that falsely represented that the fence was the property line; it was Hansford who did not make public his claim to the strip of land west of the fence. Silver Lake Heights did not intend that Hansford would act upon the uncertainty of the property line by laying claim to the strip of land. Finally, Hansford was not prejudiced by his own assertion of ownership of that land, except that he subsequently had to move his property and cattle further west.

Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

MORITZ, J., not participating.
GREGORY L. WALLER, District Judge, assigned.