IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 121,108

ALMARIO V. CHALMERS,
*Appellant*,

v.

BRITTANY BURROUGH,
*Appellee*.

SYLLABUS BY THE COURT

1.

Under the Uniform Interstate Family Support Act (UIFSA), the first procedural step in an action for enforcement or modification of an out-of-state support order is, generally, registration.

2.

Kansas district courts have original general jurisdiction unless otherwise provided by law.

3.

Parties face many procedural requirements throughout the course of litigation; the failure to meet those requirements does not necessarily create a jurisdictional void.

4.

Proper registration under the Uniform Interstate Family Support Act is not a prerequisite to a district court's subject matter jurisdiction over the order.

1

Review of the judgment of the Court of Appeals in 58 Kan. App. 2d 531, 472 P.3d 586 (2020). Appeal from Sedgwick District Court; LINDA KIRBY, judge. Opinion filed August 27, 2021. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, and the case is remanded to the district court with directions.

*Jeffrey N. Lowe*, of Penner Lowe Law Group L.L.C., of Wichita, argued the cause, and *Jessica F. Leavitt*, of Stinson, Lasswell & Wilson, LC, of Wichita, was with him on the brief for appellant.

*Cheryl J. Roberts*, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: Almario V. Chalmers attempted to register a child support order from Florida in a Kansas district court and moved to modify the amount of the order. Initially, no one realized Chalmers mistakenly left the order out of his registration materials. The district court imposed a temporary modification order. When it came to light that Chalmers had failed to include the Florida order with his registration materials, the district court concluded it never had jurisdiction to modify the order, so it voided the registration and modification and dismissed the case. The Court of Appeals affirmed.

FACTUAL AND PROCEDURAL HISTORY

In 2015, Chalmers was playing professionally for the Miami Heat of the National Basketball Association (NBA) and living in Florida. His daughter and daughter's mother, Brittany Burrough, were living in Kansas. In March of 2015, a Florida district court entered an order requiring Chalmers to pay Burrough $10,000 per month in child support for the care of their daughter.

2

In October 2018, Chalmers was allegedly no longer living in Florida, and Burrough and her daughter were still living in Kansas. Chalmers' NBA career was coming to a close, and he wanted to modify his monthly child support obligation according to his new level of income. Because Chalmers claimed to no longer be living in Florida, he did not move to modify the order in that state. Instead, on October 2, 2018, he filed a petition seeking to register the order in a Kansas district court pursuant to the Uniform Interstate Family Support Act (UIFSA). See K.S.A. 2020 Supp. 23-36,601 et seq. The petition indicated that it included the statutorily required copies of the out-of-state child support order. This was incorrect—no copies of the order were attached.

With the petition to register, Chalmers attached a motion to modify the child support. It claimed he was no longer employed and requested his monthly child support be modified pursuant to the Kansas Child Support Guidelines. Accompanying the motion was a worksheet that indicated his monthly child support obligation should be reduced to $126 per month. Also with the petition was a notice that advised Burrough she had 20 days from receipt of service to challenge the registration of the order. Upon receipt of the petition, the district court set a hearing on the motion to modify for October 30, 2018. This hearing was later continued to November 13, 2018.

Burrough was personally served with the petition and attachments on October 16, 2018. Burrough did not respond or challenge the petition to register. On November 6, 2018, the district court accepted registration of the Florida order and ruled it had "jurisdiction of this matter and of the parties hereto."

On November 13, 2020, the district court temporarily modified Chalmers' child support obligation. The modification order reduced the support to $1,000 per month

3

beginning November 1, 2018, "by agreement of the parties to preserve the peace." It appears no hearing took place before the court imposed this order. Apparently, in place of a hearing, counsel for Chalmers and an attorney appearing on behalf of Burrough's attorney of record—to whom Burrough claimed she had never spoken—agreed that Chalmers' support would be temporarily reduced to $1,000.

On January 14, 2019, Chalmers filed a Motion for Order Allowing Addition to Record. In the motion, he informed the court that he had mistakenly omitted the Florida child support order from the petition to register. He requested the court allow him to amend the petition to include the order.

On January 8, 2019, Burrough filed a motion to set aside the temporary order. She asserted she had not agreed to the temporary modification.

On January 15, 2019, Burrough also filed "a motion to dismiss the case and void [the] judgment due to lack of jurisdiction and lack of subject matter jurisdiction." In this motion, she argued that Chalmers' failure to attach the Florida child support order to his original petition violated statutory requirements, and meant the district court never obtained jurisdiction to enforce or modify the support order. She also alleged that Chalmers was still a Florida resident.

Chalmers responded, arguing that Burrough could not challenge the registration of the order because she failed to do so within 20 days from receiving the original petition. In the alternative, he argued that the Kansas district court obtained subject matter jurisdiction to register the Florida order because he had substantially complied with the registration requirements in the UIFSA.

4

On February 22, 2019, the district court ruled the failure to attach copies of the Florida order to the original petition was a critical failure that deprived it of jurisdiction. It "set aside" the registration and modification of child support. The court informed Chalmers he would need to refile his petition and serve Burrough with the new petition. On April 2, 2019, the court dismissed the case.

Chalmers appealed. A divided Court of Appeals panel affirmed the district court's decision to set aside the registration and modification. *Chalmers v. Burrough*, 58 Kan. App. 2d 531, 533, 472 P.3d 586 (2020). We granted Chalmers' petition for review.

ANALYSIS

When one or more parties subject to a child support order leaves the state that issued the order, the parties may ask another state's court to enforce or modify the order. All 50 states, including Kansas, have adopted model legislation—the UIFSA—that assists with this interstate enforcement. Hatamyar, *Interstate Establishment, Enforcement, and Modification of Child Support Orders*, 25 Okla. City U. L. Rev. 511, 512, 514 (2000).

Under the UIFSA, the first procedural step in an action for enforcement or modification of an out-of-state support order is, generally, registration. K.S.A. 2020 Supp. 23-36,601 ("A support order or income-withholding order issued in another state or a foreign support order may be registered in this state for enforcement."); Unif. Interstate Family Support Act § 601, cmt. (2008) ("Registration of an order in a tribunal of the responding state is the first step to enforce a support order from another state or foreign country."); K.S.A. 2020 Supp. 23-36,609 ("A party or support enforcement agency seeking to modify, or to modify and enforce, a child support order issued in another state

5

shall register that order in this state in the same manner provided in K.S.A. 2020 Supp. 23-36,601 through 23-36,608, and amendments thereto, if the order has not been registered.").

K.S.A. 2020 Supp. 23-36,602 provides the UIFSA requirements for properly registering an order in Kansas:

"[A] support order or income withholding order of another state or a foreign support order may be registered in this state by sending the following records to the appropriate tribunal in this state:

"(1) A letter of transmittal to the tribunal requesting registration and enforcement;
"(2) two copies, including one certified copy, of the order to be registered, including any modification of the order;
"(3) a sworn statement by the person requesting registration or a certified statement by the custodian of the records showing the amount of any arrearage;
"(4) the name of the obligor and, if known:
(A) the obligor's address and social security number;
(B) the name and address of the obligor's employer and any other source of income of the obligor; and
(C) a description and the location of property of the obligor in this state not exempt from execution; and
(5) except as otherwise provided in K.S.A. 2020 Supp. 23-36,312 and amendments thereto, the name and address of the obligee and, if applicable, the person to whom support payments are to be remitted." K.S.A. 2020 Supp. 23-36,602.

Upon registration of the order, the non-registering party must be served with notice. The notice must include a copy of the support order. K.S.A. 2020 Supp. 23-36,605(a). If the non-registering party fails to contest the out-of-state order within 20

6

days, this results in the "confirmation of the order and enforcement of the order and the alleged arrearages." K.S.A. 2020 Supp. 23-36,605(b)(3).

The UIFSA authorizes a court to enforce any registered order. But it permits modification of that order only under certain circumstances. The court that issued the support order "has and shall exercise continuing, exclusive jurisdiction to modify its child-support order" as long as (1) one of the parties or child lives in the state; or (2) the parties consent that the state may "continue to exercise jurisdiction to modify its order." Unif. Interstate Family Support Act § 205; K.S.A. 2020 Supp. 23-36,205. This rule is central to the UIFSA's goal of ensuring there is only one child support order in place at a time. § 205, cmt. ("Indeed [continuing exclusive jurisdiction] is fundamental to the principle of one-child-support-order-at-a-time.").

K.S.A. 2020 Supp. 23-36,611 describes the circumstances under which the issuing court's continuing exclusive jurisdiction is disrupted and a Kansas court may modify an out-of-state order:

"If K.S.A. 2020 Supp. 23-36,613, and amendments thereto, does not apply, upon petition a tribunal of this state may modify a child support order issued in another state which is registered in this state if, after notice and hearing the tribunal finds that:

"(1) The following requirements are met:
(A) Neither the child, nor the obligee who is an individual, nor the obligor resides in the issuing state;
(B) a petitioner who is a nonresident of this state seeks modification; and
(C) the respondent is subject to the personal jurisdiction of the tribunal of this state; or

7

"(2) this state is the state of residence of the child, or a party who is an individual is subject to the personal jurisdiction of the tribunal of this state, and all of the parties who are individuals have filed consents in a record in the issuing tribunal for a tribunal of this state to modify the support order and assume continuing, exclusive jurisdiction." K.S.A. 2020 Supp. 23-36,611(a).

Under K.S.A. 2020 Supp. 23-36,613(a), "[i]f all of the parties who are individuals reside in this state and the child does not reside in the issuing state, a tribunal of this state has jurisdiction to enforce and to modify the issuing state's child support order in a proceeding to register that order." After a court modifies an out-of-state order, it "becomes the tribunal of continuing, exclusive jurisdiction." K.S.A. 2020 Supp. 23-36,611(e).

In this case, Chalmers failed to satisfy the explicit procedural requirements for registering his Florida support order in Kansas. Consequently, the district court ruled that Chalmers failed to substantially comply with the registration requirements and that the court never obtained jurisdiction over the order. As a result, it set aside its temporary modification order and dismissed the case.

A Court of Appeals majority affirmed the district court's decision, ruling that the failure to substantially comply with the requirements deprived the court of subject matter jurisdiction. Judge Atcheson dissented. He disagreed that proper registration under the UIFSA is how the district court obtains subject matter jurisdiction over a support order. He asserted that the properly registered order simply "grants authority to a court to act in those respects as to a particular order and the parties to that order." *Chalmers*, 58 Kan. App. 2d at 554. Consequently, he opined, an unauthorized order is voidable, not void, and the court may leave it in place if it is not timely challenged. *Chalmers*, 58 Kan. App. 2d

8

at 554. Because Burrough challenged the orders, Judge Atcheson concluded, the district court was correct to void them but should have retained the case and permitted Chalmers to file an amended registration petition and motion to modify. *Chalmers*, 58 Kan. App. 2d at 554.

Before this court, Chalmers concedes that he failed to properly register the order and adopts the dissent's argument that proper registration was not a prerequisite to the court's subject matter jurisdiction. But Chalmers disagrees with Judge Atcheson's conclusion that the orders were properly voided. He avers that the orders should stand, and the court should issue an order registering the Florida order or allowing him to amend his deficient registration.

*Standard of Review*

We review issues of subject matter jurisdiction and statutory interpretation de novo. *Via Christi Hosps. Wichita, Inc. v. Kan-Pak, LLC*, 310 Kan. 883, 889, 451 P.3d 459 (2019); *Jarvis v. Dep't of Revenue*, 312 Kan. 156, 159, 473 P.3d 869 (2020).

*Discussion*

Subject matter jurisdiction is the power of the court to hear and decide a particular type of action. *In re Marriage of Williams*, 307 Kan. 960, 967-68, 417 P.3d 1033 (2018). The power comes from "the Kansas Constitution and Kansas statutes." *Marriage of Williams*, 307 Kan. at 967. Article 3 of the Kansas Constitution provides that "[t]he district courts shall have such jurisdiction in their respective districts as may be provided

9

by law." Kan. Const., art. 3, § 6(b). K.S.A. 20-301 gives district courts "general original jurisdiction of all matters, both civil and criminal, unless otherwise provided by law."

"'[P]arties cannot confer subject matter jurisdiction by consent, waiver, or estoppel. Nor can parties convey jurisdiction on a court by failing to object to its lack of jurisdiction.'" *Marriage of Williams*, 307 Kan. at 965 (quoting *Kansas Bd. of Regents v. Skinner*, 267 Kan. 808, 814, 987 P.2d 1096 [1999]).

Because Kansas district courts have original general jurisdiction unless otherwise provided by law, we turn to the statutory language in the UIFSA to discern whether the legislation restricts that jurisdiction over out-of-state child support orders and gives it back only upon proper registration of the order. See *Kingsley v. Kansas Dep't of Revenue*, 288 Kan. 390, 408-09, 204 P.3d 562 (2009) (looking to statutory language for limits on general jurisdiction of district court). This requires statutory interpretation.

> "The most fundamental rule of statutory interpretation is that the intent of the Legislature governs if that intent can be ascertained. *In re Joint Application of Westar Energy & Kansas Gas and Electric Co.*, 311 Kan. 320, 328, 460 P.3d 821 (2020). In ascertaining this intent, we begin with the plain language of the statute, giving common words their ordinary meaning. 311 Kan. at 328. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016). We will only review legislative history or use canons of construction if the statute's language or text is ambiguous. *In re Westar Energy*, 311 Kan. at 328." *In re M.M.*, 312 Kan. 872, 874, 482 P.3d 583 (2021).

10

There is no language in the UIFSA that explicitly deprives a district court of general subject matter jurisdiction over support orders. In fact, the UIFSA clearly acknowledges that it does not divest the court of its general authority to adjudicate issues regarding foreign support orders. K.S.A. 2020 Supp. 23-36,104 provides:

"Remedies provided by this act are cumulative and do not affect the availability of remedies under other law or the recognition of a foreign support order on the basis of comity. . . . This act does not . . . [p]rovide the exclusive method of establishing or enforcing a support order under the law of this state . . . ."

Not only is there no language in the UIFSA depriving the district court of subject matter jurisdiction and hinging it on registration, there is explicit language in the Act acknowledging the court's power to consider an order even if it has not been registered. If two or more orders have been issued and a Kansas court has personal jurisdiction over the parties, a Kansas court may rule on which order controls. K.S.A. 2020 Supp. 23-36,207(b). A party or a support agency may initiate this action along with a petition for registration *or* "as a separate proceeding." K.S.A. 2020 Supp. 23-36,207(c). A request for this determination "must be accompanied by a copy of every child support order in effect," but this is not the same as registration. K.S.A. 2020 Supp. 23-36,207(d). Proper registration requires more than a copy of the orders in effect. See K.S.A. 2020 Supp. 23-36,602.

And an official comment accompanying the model UIFSA provision identical to K.S.A. 2020 Supp. 23-36,601 also indicates registration is not a prerequisite to the court's subject matter jurisdiction over an out-of-state order:  "The act does not contemplate registration as serving a purpose in itself. In that regard, registration is a process, *and the*

11

*failure to register does not deprive an otherwise appropriate forum of subject matter jurisdiction.*" (Emphasis added.) Unif. Interstate Family Support Act § 601, cmt. (2008).

Nonetheless, the Court of Appeals majority ruled that the "UIFSA . . . modified Kansas courts' general jurisdiction to consider out-of-state child-support orders . . . and replaced it with a uniform statutory framework vesting subject-matter jurisdiction in only one court at a time." *Chalmers*, 58 Kan. App. 2d at 542. It based this conclusion on the UIFSA provisions requiring parties to register their out-of-state orders and the provision providing a Kansas court "'upon petition . . . may modify a child support order issued in another state which is registered in this state.'" *Chalmers*, 58 Kan. App. 2d at 542 (quoting K.S.A. 2020 Supp. 23-63,611[a]). The majority concluded "[i]n short, without a properly registered out-of-state order, a Kansas court has no authority, i.e., no jurisdiction, to hear the case." *Chalmers*, 58 Kan. App. 2d at 542.

We think the majority took some analytical liberties. The provisions it cited do not provide that registration is a "prerequisite" to the court taking "any action on [the] order." *Chalmers*, 58 Kan. App. 2d at 542. They list procedural requirements necessary to facilitate a court's *exercise* of its authority, but this is not the same as a jurisdictional prerequisite. Parties face many procedural requirements throughout the course of litigation; the failure to meet those requirements does not necessarily create a jurisdictional void. See *State v. Dunn*, 304 Kan. 773, 812, 375 P.3d 332 (2016) (State required to offer charging document that complies with statutory requirements but failure to do so does not create "absence of jurisdiction").

To be sure, this court has previously considered procedural requirements placed on parties to be jurisdictional. In *Bruch v. Kansas Dep't of Revenue*, 282 Kan. 764, Syl. ¶ 2, 148 P.3d 538 (2006), *disapproved on other grounds by Sloop v. Kansas Dep't of Revenue*,

296 Kan. 13, 290 P.3d 555 (2012), this court described pleading requirements for petitions for review of agency action as jurisdictional. But this case is distinguishable because the district court's general jurisdiction in *Bruch* was already limited by the provisions in the Kansas Judicial Review Act (KJRA). See K.S.A. 77-606 (KJRA "establishes the exclusive means of judicial review of agency action"). As we have noted, the UIFSA is explicitly opposite—it acknowledges that the court's authority to adjudicate support orders exists outside of the UIFSA.

Notably, since *Bruch* was decided, the Legislature has amended the statute governing pleading requirements to clarify that "[f]ailure to include some of the information listed in subsection (b) in the initial petition does not deprive the reviewing court of jurisdiction over the appeal. Leave to supplement the petition with omitted information required by subsection (b) shall be freely given when justice so requires." K.S.A. 77-614 (c).

This court has also ruled that the district court was without subject matter jurisdiction when a party filed a lawsuit prematurely. *Sleeth v. Sedan City Hosp.*, 298 Kan. 853, 871, 317 P.3d 782 (2014). The relevant statute required parties wishing to bring a claim against a municipality under the Kansas Tort Claims Act to file notice of the claim and wait 120 days before initiating the action. But, again, like in *Bruch*, the district court was operating under an explicit limit on its general jurisdiction. K.S.A. 2012 Supp. 12-105b(a) provides that "no claim [against a municipality] shall be allowed except in accordance with the provisions of this section." And the specific statute at issue further restrained the court's authority, providing that "no action shall be commenced until" the requirements were satisfied and "no person may initiate an action against a municipality unless the claim has been denied in whole or part." *Sleeth*, 298 Kan. at 871 (quoting K.S.A. 2012 Supp. 12-105b[d]). This court observed that the statute "plainly provides

13

that no person may initiate a lawsuit until the claim is denied or statutorily deemed denied" and that "[a]ny other reading of the statute diminishes its utility and the underlying policy of giving a municipality an opportunity to" respond and resolve the claim. *Sleeth*, 298 Kan. at 870-71.

The *Sleeth* court noted that this court has also held that the failure to exhaust administrative remedies under the KJRA is a jurisdictional bar, citing *Kingsley*, 288 Kan. at 408-09. But, again, the KJRA explicitly curtails the court's general authority over review of agency action—a situation plainly different from Chalmers'.

In all the aforementioned cases, this court looked to explicit language limiting the court's general jurisdiction in considering whether legislation restricted a court's subject matter jurisdiction. The UIFSA does not set out any general limits on the court's constitutional and statutory jurisdiction. Nor does it explicitly condition the court's authority on the registration requirements.

The lack of language limiting the court's general jurisdiction or explicitly conditioning it on proper registration, coupled with the official accompanying comment, indicates that the registration requirements in the UIFSA are not jurisdictional prerequisites. We agree with Chalmers' position and Judge Atcheson's conclusion that Chalmers' failure to properly register his order had no effect on the district court's subject matter jurisdiction. We reverse the district court's legal conclusion that the failure to properly register the order meant it did not have jurisdiction to rule on the support order.

Because the district court concluded it never had subject matter jurisdiction to rule in this case, it did not rule on the merits of Chalmers' Motion for Order Allowing Addition to Record, or Burrough's motion to set aside the temporary order. We remand

14

the case to the district court so it may consider the parties' motions and proceed with the case.

Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, and the case is remanded to the district court with directions.