IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 124,160

BENCHMARK PROPERTY REMODELING, LLC,
*Appellant*,

v.

GRANDMOTHERS, INC., COREFIRST BANK & TRUST, KANSAS DEPARTMENT
OF REVENUE, ROBERT ZIBELL, and STATE OF KANSAS,
*Appellees*.

SYLLABUS BY THE COURT

1.

Subject matter jurisdiction is a court's power to hear and decide a case. It cannot be conferred by the parties' stipulation, consent, or waiver, and a court may consider its own jurisdiction—even sua sponte—at any time.

2.

The jurisdiction of Kansas appellate courts is governed by statutes. K.S.A. 2023 Supp. 60-2102(a)(4) grants appellate courts jurisdiction to hear appeals arising from a district court's final decision.

3.

Although K.S.A. 2023 Supp. 60-2102(a)(4) does not define the term, a final decision disposes of the entire merits of the controversy and reserves no further questions or directions for the future or further action of the district court.

4.

A district court's entry of partial summary judgment on some claims, but not all, does not constitute a final decision, so it is not appealable under K.S.A. 2023 Supp. 60-

2102(a)(4) absent certification under K.S.A. 2023 Supp. 60-254(b). But if the remaining claims are dismissed, the previous partial summary judgment becomes a final judgment adjudicating all claims.

5.

When the evidence pertaining to the existence of a contract or the content of its terms is conflicting or permits more than one inference, a question of fact is presented— and thus summary judgment is improper.

Review of the judgment of the Court of Appeals in an unpublished opinion filed June 2, 2023. Appeal from Shawnee District Court; MARY E. CHRISTOPHER, judge. Oral argument held April 23, 2024. Opinion filed August 9, 2024. Judgment of the Court of Appeals reversing the district court is affirmed. Judgment of the district court is reversed, and the case is remanded.

*Diane Hastings Lewis,* of Brown & Ruprecht, PC, of Kansas City, Missouri, argued the cause and was on the briefs for appellant.

*Bryan W. Smith*, of Smith Law Firm, of Topeka, argued the cause, and *Christine Caplinger*, of the same firm, was with him on the briefs for appellees Grandmothers, Inc., and Robert Zibell.

*Adam D. King*, of Kansas Department of Revenue, was on the brief for appellees Kansas Department of Revenue and State of Kansas.

The opinion of the court was delivered by

WILSON, J.: Although it rarely makes front-page news, the concept of jurisdiction lies at the heart of the rule of law. But jurisdiction is not merely some obscure legal technicality. A court's jurisdiction is its very power to hear and decide cases, perhaps the most fundamental check on the improper exercise of judicial power. After all, a court without jurisdiction is no court at all, but an expensive debate club overseen by a powerless spectator in a black choir robe.

In this appeal, Grandmothers, Inc., claims that neither the Kansas Court of Appeals nor this court may exercise appellate jurisdiction to consider the appeal of Benchmark Property Remodeling, LLC, which appealed the district court's entry of summary judgment in Grandmothers' favor and its entry of judgment on the pleadings against the Kansas Department of Revenue. After the district court's entry of partial summary judgment, Benchmark dismissed without prejudice its four remaining claims against Grandmothers and appealed. Grandmothers claims that the dismissal without prejudice renders the district court's entry of judgment nonfinal—which means there is nothing for Benchmark to appeal (yet), and we have no authority to allow an appeal.

We disagree. Under the specific facts of the case, the district court's judgment was final and thus appellate jurisdiction is proper. Further, since appellate jurisdiction is proper, we note review was not sought of the Court of Appeals panel's reversal of the district court's entry of judgment on the pleadings, so the panel's decision on that judgment is final. (If appellate jurisdiction were lacking, the panel's decision would have been void.) Finally, we affirm the panel's reversal of the district court's summary judgment and remand the matter to the district court for further proceedings.

FACTS AND PROCEDURAL BACKGROUND

Benchmark is a construction and remodeling company in Topeka, Kansas, and is owned by Mark McBeth. Robert Zibell owns Grandmothers, which in turn owns the building at 300 SW 29th Street in Topeka. KDOR is the building's tenant.

In August 2018, KDOR and Benchmark finalized quotes for remodeling work on the building, which Benchmark offered to perform. That same month, Grandmothers and KDOR entered a "Third Amendment to Lease" that said, in part:

3

"This Amendment governs construction contemplated per the quotes dated 05/28/2018, 06/04/2018, 08/01/2018, and 08/02/2018 from [Benchmark], attached hereto as Exhibit A and corresponding floor plans, attached as Exhibit B. [KDOR] shall pay a lump sum payment of $136,052.39 to [Grandmothers] for the satisfactory work completed upon successful installation. Payment by [KDOR] is contingent on [KDOR's] satisfaction of all work completed. The related items will become a fixture to the leased premises and will remain upon and be surrendered with the leased premises at the termination of the Real Estate Lease Agreement."

Benchmark's estimates, which were attached to the third amendment, matched the figure quoted in the third amendment: $136,052.39. Benchmark and Grandmothers never made a written contract for the remodeling work, and the Third Amendment to Lease does not require Grandmothers to pay Benchmark. Nor did Benchmark contract with Zibell in his personal capacity.

Even so, Benchmark got started on the work. At some point, Zibell apparently tried to have another entity take over the remodel. But in an email to Zibell and Grandmothers, KDOR wrote:

"The [KDOR] does not authorize the construction work you have commenced at [the building] and we will not make payment for this construction. The bid and third amendment to the lease agreement was for [Benchmark] to complete this project."

Benchmark finished the remodel work on December 4, 2018. Benchmark then submitted invoices to Grandmothers and KDOR for payment. In two installments, KDOR paid Grandmothers the full amount set out in the third amendment. Grandmothers "was aware that under the Third Amendment and lease that payment from KDOR triggered Grandmothers' responsibility to pay Benchmark."

4

On December 9, Grandmothers paid Benchmark $21,192.67 (with $100 missing because of a mathematical error). But when Grandmothers received KDOR's second payment of $114,759.72, it tried to pay Benchmark only $94,551.39. Grandmothers attempted to justify the $94,551.39 figure by claiming withholdings of $9,702.62 (for legal bills plus a 5 percent "fee") and a further $10,505.71 (for a 10 percent "retainage"). KDOR never told Grandmothers to withhold money from Benchmark, and Grandmothers never had an agreement with KDOR or Benchmark that would permit it to withhold 10 percent "retainage." (Though not uncontroverted, Zibell testified at his deposition that he thought an oral agreement with McBeth permitted him to withhold the 5 percent; McBeth remembered a phone conversation with Zibell, but not an agreement to give Zibell 5 percent.)

Grandmothers later paid $54,248.33 to some of Benchmark's subcontractors, leaving $60,611.30 outstanding to Benchmark. Grandmothers eventually paid Benchmark $40,303.06, leaving about $20,308 at issue. (Because these sums were presented in the parties' uncontroverted facts, it is unclear whether these amounts accounted for the earlier $100 mathematical error.)

*District Court Proceedings*

After filing a mechanic's lien, Benchmark initially sued Grandmothers alone. It later added claims against CoreFirst Bank & Trust, KDOR, and Robert Zibell. Finally, in its second amended petition, Benchmark sued:

- Grandmothers, KDOR, and the State for breach of contract (Count I);
- Grandmothers, for quantum meruit/unjust enrichment (Count II);
- Grandmothers, for quantum meruit/unjust enrichment relating to extra work (Count III);

5

- Grandmothers, KDOR, and the State for violating the Kansas Fairness in Private Construction Contract Act and, alternatively, the Kansas Fairness in Public Construction Contract Act (Counts IV and V);

- Grandmothers and Zibell, for conversion (Count VI);

- Grandmothers, KDOR, the State, and CoreFirst, for foreclosure of mechanic's lien (Count VII); and

- Zibell, for tortious interference with a contract (Count VIII).

KDOR moved for judgment on the pleadings. The district court ultimately granted KDOR judgment on the pleadings on counts I, IV, V, and VII.

Zibell and Grandmothers moved for summary judgment, while Benchmark moved for partial summary judgment. The district court granted summary judgment to Grandmothers on Counts I (breach of contract), IV and V (violation of Kansas Fairness in Private Construction Contract Act and of the Kansas Fairness in Public Construction Contract Act), and VII (mechanic's lien). The court concluded Benchmark provided insufficient evidence to show that a contract existed with Grandmothers and held that "there was not consideration or a meeting of the minds sufficient for a contract to form."

Benchmark moved to dismiss its remaining claims (II, III, VI, and VIII) without prejudice, asserting that it "intends to appeal [the court's adverse rulings on KDOR's motion for judgment on the pleadings and Grandmothers' motion for summary judgment] regarding the Breach of Contract and related claims . . . but cannot do so until the[re] is a final judgment as to all claims." The district court dismissed Benchmark's remaining claims on April 19, 2021. Benchmark appealed on May 17, 2021. On July 16, 2021, it filed a docketing statement reflecting an appeal from a final order under K.S.A. 2020 Supp. 60-2102(a)(4). The docketing statement said:

6

"Benchmark appeals the District Court's July 1, 2020 Journal Entry granting Defendant KDOR's Motion for Judgment on the Pleadings and January 13, 2021 Journal Entry granting in part Defendant Grandmothers, Inc.'s Motion for Summary Judgment, both of which were made final by the Court's Journal Entry of Dismissal Without Prejudice entered on April 19, 2021."

Under K.S.A. 2020 Supp. 60-518, Benchmark would have had until October 19, 2021, to refile its four dismissed claims; the record does not reflect that Benchmark did so.

*Appellate Proceedings*

On appeal, a panel of the Kansas Court of Appeals asked the parties to brief appellate jurisdiction, focusing on *Smith v. Welch*, 265 Kan. 868, 869-70, 872, 967 P.2d 727 (1998), and *Arnold v. Hewitt*, 32 Kan. App. 2d 500, 503-05, 85 P.3d 220 (2004). *Benchmark Property Remodeling, LLC v. Grandmothers, Inc.,* No. 124,160, 2023 WL 3775017, at *3 (Kan. App. 2023) (unpublished opinion). The panel then concluded jurisdiction was proper because Benchmark never refiled its four dismissed claims (and was then out of time to do so) and because "even though Benchmark never requested findings for the entry of a final judgment pursuant to K.S.A. 2020 Supp. 60-254(b), there are no pending claims in the district court." 2023 WL 3775017, at *4.

The panel also reversed the district court's entry of judgment on the pleadings to KDOR, concluding that "significant fact issues surrounding the parties' intent" undercut the district court's finding that no contract existed between KDOR and Benchmark. 2023 WL 3775017, at *6. Because KDOR did not petition for review, we leave aside further discussion of the panel's decision concerning KDOR.

Finally, the panel reversed the district court's entry of summary judgment on counts I, IV, V, and VII. After noting that the district court had analytically linked all

7

four claims by its conclusion that no contract existed, the panel looked at the deposition testimony and the parties' conduct to conclude that, when viewed in a light most favorable to Benchmark, the evidence could support a finding that a contract existed between Benchmark and Grandmothers. 2023 WL 3775017, at *7-8.

Grandmothers and Zibell petitioned this court for review; KDOR did not.

ANALYSIS

*Appellate jurisdiction is proper.*

Like the Court of Appeals, we begin by assessing our own jurisdiction. Grandmothers argues that, at the time of Benchmark's appeal, the district court's summary judgment decision was not a final order under K.S.A. 2020 Supp. 60-2102(a)(4) because Benchmark could have simply refiled the claims it had dismissed without prejudice. Grandmothers also claims that Benchmark failed to request a certification under K.S.A. 2020 Supp. 60-254(b), which—it suggests—was required to render the district court's partial summary judgment final. We disagree.

Issues of subject matter jurisdiction and statutory interpretation constitute questions of law, over which an appellate court exercises unlimited review. *Chalmers v. Burrough*, 314 Kan. 1, 7, 494 P.3d 128 (2021). "Subject matter jurisdiction is the power of the court to hear and decide a particular type of action." *Burrough*, 314 Kan. at 7. The parties cannot grant a court jurisdiction by stipulation, consent, or waiver, and a court may consider its own jurisdiction—even sua sponte—at any time. *State v. Garcia-Garcia*, 309 Kan. 801, 806, 441 P.3d 52 (2019); *Bartlett Grain Co. v. Kansas Corporation Comm'n*, 292 Kan. 723, 726, 256 P.3d 867 (2011). "[W]hen the record discloses lack of jurisdiction, it is the duty of the court to dismiss the appeal." *Materi v. Spurrier*, 192 Kan. 291, 292, 387 P.2d 221 (1963).

8

Under article 3, section 3 of the Kansas Constitution, we have "appellate jurisdiction as may be provided by law." The right of appeal is, thus, purely statutory. *State v. McCroy*, 313 Kan. 531, 534, 486 P.3d 618 (2021). K.S.A. 2023 Supp. 60-2102(a)(4) provides that:

> "[T]he appellate jurisdiction of the court of appeals may be invoked by appeal as a matter of right from:
>
> . . . .
>
> (4) A final decision in any action, except in an action where a direct appeal to the supreme court is required by law. In any appeal or cross appeal from a final decision, any act or ruling from the beginning of the proceedings shall be reviewable."

Despite its wording, we have construed K.S.A. 2023 Supp. 60-2102(a)(4) "as applying to the Supreme Court as well as to the Court of Appeals." *Brower v. Bartal*, 268 Kan. 43, 45-46, 990 P.2d 1235 (1999).

Our statutes do not define "final decision." But we have consistently recognized that the phrase is "self-defining." E.g., *Kaelter v. Sokol*, 301 Kan. 247, 250, 340 P.3d 1210 (2015); *Honeycutt v. City of Wichita*, 251 Kan. 451, 457, 836 P.2d 1128 (1992) (quoting 2 Gard's Kansas C. Civ. Proc. 2d Annot. § 60-2102, Comments [1979]). A final decision is thus one "that finally decides and disposes of the entire merits of the controversy and reserves no further questions or directions for the future or further action of the court." *Honeycutt*, 251 Kan. 451, Syl. ¶ 1. See also *Sokol*, 301 Kan. at 250 (defining "final order" as "an order that definitely terminates a right or liability involved in an action or that grants or refuses a remedy as a terminal act in the case"); *American Trust Administrators, Inc. v. Sebelius*, 267 Kan. 480, 480, Syl. ¶ 1, 981 P.2d 248 (1999).

9

Our jurisdictional quandary arises from Benchmark's voluntary dismissal without prejudice of the four claims that survived the district court's decisions on partial summary judgment and judgment on the pleadings:  Counts II, III, VI, and VIII of its second amended petition. We begin with Grandmothers' argument that Benchmark could have simply refiled its dismissed claims (though it did not), which raises the dreaded specter of piecemeal litigation and concurrent jurisdiction.

But we find Grandmothers' argument unpersuasive. As the panel correctly noted, the dismissal of Benchmark's remaining claims left the district court with nothing more to do. Whatever else Benchmark could have done in the future, in terms of refiling the claims, at the time of this appeal there were no remaining claims and nothing more for the court to do. Moreover, as the panel also noted, there is no indication Benchmark ever tried to refile its dismissed claims, which are now more than three years in the rear-view mirror. 2023 WL 3775017, at *4. There is no danger of piecemeal litigation here—the overriding concern behind the requirement of a final decision. E.g., *AMCO Ins. Co. v. Beck*, 258 Kan. 726, 728, 907 P.2d 137 (1995).

Grandmothers' claim of jurisdictional infirmity thus hinges entirely on hypotheticals, including the nightmare scenario of *Arnold*, 32 Kan. App. 2d 500. There, as here, after the district court granted summary judgment on some (but not all) of the plaintiffs' claims, plaintiffs moved to dismiss without prejudice the remaining claims. 32 Kan. App. 2d at 501. Then—unlike this case—after the plaintiffs appealed, they *refiled* the claim they had previously dismissed, which was pending in district court as of the time of the oral argument. 32 Kan. App. 2d at 501. On appeal, the Court of Appeals panel held that the district court had issued no final decision and thus appellate jurisdiction could not lie. 32 Kan. App. 2d at 505.

But *Arnold* is factually inapposite. This is a critical distinction, given that *Arnold*'s holding was limited to the specific facts before it: a partial summary judgment order followed by a voluntary dismissal without prejudice, an appeal, and then a *refiling* of the dismissed claims. 32 Kan. App. 2d 500, Syl. ¶ 5 (couching the holding "under the facts presented"). *Arnold* was at pains to distinguish a "pattern . . . repeated in other Kansas appellate court cases where a similar procedural history resulted in the court hearing the merits of the case without specifically ruling that a 'final decision' had been reached" by pointing out that, in those cases, "there is no indication in the opinions that the plaintiffs refiled the dismissed claim in district court while their appeal was pending." 32 Kan. App. 2d at 502-03. Because the case before us is factually distinct, we need not—and do not—consider whether *Arnold* correctly concluded that it lacked appellate jurisdiction.

Instead, we clarify that the word "final" in K.S.A. 2023 Supp. 60-2102(a)(4)'s "final decision" language refers to matters actually before the district court—not claims that could have been filed (but were not), and not claims that are *no longer* before the court because of their dismissal. This interpretation reflects the "liberal construction to be given our procedural statutes and rules and the intent of our code of civil procedure and our appellate rules"—even in matters of jurisdiction. *Cornett v. Roth*, 233 Kan. 936, 939, 666 P.2d 1182 (1983). Thus, if, as here, a district court rules on the merits of some of the parties' claims, and then the parties themselves remove the rest of the claims from the case, nothing remains for the district court to do; the case is over, unless someone appeals. To conclude otherwise would subordinate the concept of appellate jurisdiction to an indefinite universe of hypothetical scenarios—a universe we need not consider in determining that *here*, the district court's partial summary judgment order *became* final with the dismissal (even without prejudice) of Benchmark's final four claims.

Nor are we persuaded that K.S.A. 2023 Supp. 60-254(b) serves as the only mechanism by which an otherwise nonfinal judgment may become final. While K.S.A. 2023 Supp. 60-254(b) no doubt provides one such procedural pathway to finality when a

district court decides only some claims before it, we see no reason why the voluntary dismissal of all remaining claims—with prejudice or not—cannot provide another pathway in circumstances like the case before us.

Finally, we note the line of cases holding that appellate jurisdiction cannot lie from appeals from orders of dismissal without prejudice. See *Arnold*, 32 Kan. App. 2d at 503 (discussing, inter alia, *Bain v. Artzer*, 271 Kan. 578, Syl. ¶ 2, 25 P.3d 136 [2001]). As in *Arnold*, those cases are not on point because Benchmark is not appealing the order of dismissal. Here, by removing all remaining matters from the district court's consideration, the dismissal without prejudice of Benchmark's remaining four claims cleared the way for the district court's partial summary judgment decision to *become* final—a final decision over which both we and the Court of Appeals may exert appellate jurisdiction.

*The Court of Appeals panel correctly reversed the district court's entry of partial summary judgment.*

We next turn to the merits. Grandmothers claims the panel misconstrued the evidence in holding that questions of fact remain that *could* show a contract between Benchmark and Grandmothers. Again, we disagree.

An appellate court reviews a district court's summary judgment order de novo:

> "'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive

12

issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.'" *Fairfax Portfolio v. Carojoto*, 312 Kan. 92, 94-95, 472 P.3d 53 (2020) (quoting *Hansford v. Silver Lake Heights*, 294 Kan. 707, 710-11, 280 P.3d 756 [2012]).

"When the evidence pertaining to the existence of a contract or the content of its terms is conflicting or permits more than one inference, a question of fact is presented. However, whether undisputed facts establish the existence and terms of a contract raises a question of law for the court's determination." *Nungesser v. Bryant*, 283 Kan. 550, 566, 153 P.3d 1277 (2007); see also *U.S.D. No. 446 v. Sandoval*, 295 Kan. 278, 282, 286 P.3d 542 (2012).

We have reviewed the parties' uncontroverted facts presented at summary judgment and the attachments. Like the panel, we conclude that Grandmothers' actions in the case could—if viewed in a light most favorable to Benchmark—support a finding that a contract existed between Benchmark and Grandmothers. As the panel noted, Grandmothers authorized Benchmark to begin the work, while Zibell admitted "that he understood Grandmothers was obligated to pay Benchmark for the work it performed." 2023 WL 3775017, at *7.

Zibell's deposition testimony also supports the inference that *some* form of oral agreement existed:

> "I think I made all but maybe $10,000 that I've held back for a verbal agreement that I had for a 5 percent fee. There might have been some retainage, but I think that's been paid.
>
> . . . .
>
> "[P]art of it was 5 percent fee that—that I had talked to Mark [McBeth] about. I said if I have to do this work, be the middleman, give me a 5 percent fee, or you drop out,

13

I'll to [*sic*] the work and give you 5 percent for putting the bid together and I'll just do it. So the 5 percent of that 136 [thousand] would be approximately 6,500 bucks, I guess."

More, Zibell testified that he told McBeth he wanted "5 percent for all this headache." Zibell thus claimed that he withheld the money based on an "oral agreement" with McBeth that occurred, "Prior to his actually beginning the work." Zibell also claimed that, at the time he signed the third amendment, his intention was "to see if Benchmark could perform the work."

McBeth testified that Zibell "directed [him] to do the work" and "let me know that the job was supposed to start." Indeed, McBeth claimed Zibell was frustrated that Benchmark did not begin the project sooner and told McBeth he wanted the work to start as soon as possible. McBeth also testified that, during a phone call, Zibell told him "that my contract was really good and he could make some money off of it, so he was willing to take it." He also claimed that he had gone back to the job site and "corrected [some] issues" he characterized as "warranty work" at the direction of a KDOR representative. Still, McBeth denied that he and Zibell ever agreed that Zibell would pocket 5 percent.

Between the parties' uncontroverted actions—Benchmark in performing the work and Grandmothers in (partially) paying Benchmark—and the above testimony of their respective owners, the panel correctly concluded that, viewed in a light most favorable to Benchmark, there is a genuine dispute of material fact as to the existence of an oral contract and its terms. The district court erred by resolving this dispute on summary judgment. Thus, we reverse the district court's decision and remand for further proceedings.

CONCLUSION

We affirm the panel's reversal of the district court's entry of summary judgment in Grandmothers' favor and remand the matter to the district court. Further, although the panel's ruling of the district court's entry of judgment on the pleadings in KDOR's favor is not before us, our decision on appellate jurisdiction necessarily leaves intact the panel's reversal and remand on that issue.