IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 124,965

TRACEY MURRAY and the ESTATE OF ROBERT MURRAY,
*Appellants*,

v.

MIRACORP, INC., NTTS, INC., LANE GOEBEL, and SHANE GOEBEL,
*Appellees*.

SYLLABUS BY THE COURT

1.

K.S.A. 60-513(a) provides a two-year statute of limitations for several civil actions. K.S.A. 60-513(b) provides that, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party. For such situations, there are thus two questions involved in determining when a statute of limitations begins to run: (1) When did the plaintiffs suffer an actionable injury—i.e., when were all the elements of the cause of action in place? and (2) When did the existence of that injury become reasonably ascertainable to them?

2.

The phrase "reasonably ascertainable" implicates a duty of reasonable investigation under the circumstances. In determining whether an investigation was reasonable, the court considers reliable sources contemporaneously and reasonably available to the injured party that would have provided him information about the injury and its causation.

1

Review of the judgment of the Court of Appeals in an unpublished opinion filed January 13, 2023. Appeal from Johnson District Court; ROBERT J. WONNELL, judge. Oral argument held September 12, 2023. Opinion filed April 5, 2024. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Stanley B. Bachman,* of Morefield Speicher Bachman, LC, of Overland Park, argued the cause, and *Andrew L. Speicher* and *Sue L. Becker*, of the same office, were with him on the briefs for appellants.

*Ryan M. Paulus*, of Cornerstone Law Firm, of Kansas City, Missouri, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

WILSON, J.: Tracey Murray and the Estate of Robert Murray have asserted both legal and equitable claims against Miracorp, Inc., NTTS, Inc., Lane Goebel, and Shane Goebel (collectively, Miracorp) based on conduct that took place before 2012. But the district court granted summary judgment to Miracorp on the Murrays' claims, reasoning that they were barred by the applicable statutes of limitations. On appeal, a majority of a panel of the Kansas Court of Appeals held that the Murrays' claims were time-barred because their injuries were reasonably ascertainable in 2011 and thus affirmed the district court. *Murray v. Miracorp, Inc.*, No. 124,965, 2023 WL 176652, at *10 (Kan. App. 2023) (unpublished opinion).

We agree with the panel majority and the district court. Under the uncontroverted facts before us, the Murrays simply waited too long to investigate—and ultimately seek redress for—their injuries. We thus affirm the lower courts.

FACTS AND PROCEDURAL BACKGROUND

*Underlying Facts*

Because the district court resolved this matter on summary judgment, the uncontroverted facts before us are limited. On December 1, 1989, Robert Murray entered into an agreement that granted him a 5% interest in Miracorp, Inc. and listed him as Secretary and Lane as President of the company. But it appears Murray had little to no involvement with Miracorp: although the Murrays received annual K-1 tax returns from Miracorp from at least 1998 to 2015, they never received any other information about the company. If Miracorp ever held shareholder meetings, the Murrays did not know about them. Nor did Miracorp ever pay the Murrays any dividends. Still, based on the K-1 statements, the Murrays did not believe Miracorp was making much money.

In March 2009, Lane and Miracorp were sued in two sexual harassment lawsuits filed in the United States District Court of Kansas. Miracorp prevailed in one of these suits on summary judgment and resolved the other by paying a settlement on October 26, 2011. On May 27, 2011, one of the plaintiffs filed a "Petition for Registration of Foreign Judgment" of $2,298,000 against "MiraCorp, Inc. d/b/a National Truck and Trailer Services" and of $250,000 against Lane. Tracey Murray later admitted that she learned of these lawsuits in 2016 by searching online and finding that they "resulted in judgments over $2,000,000." No one at Miracorp told the Murrays of these lawsuits.

On June 17, 2011, Lane incorporated a new business, NTTS, Inc. (Somewhat confusingly, Miracorp had previously sometimes been known as "National Truck and Trailer Services," or "NTTS".) The Murrays claim that, right after incorporating NTTS,

3

Lane "caused Miracorp . . . to cease to conduct new business." By the end of 2011, Lane had transferred most of Miracorp's assets to NTTS.

Miracorp also entered into a licensing agreement with Garmin Ltd. in 2009, under which Garmin's global positioning system would feature a Miracorp directory. The Murrays learned Garmin was using Miracorp's name and logo sometime in 2011, which caused them to become "'curious of the value of Rob's stock in Miracorp.'"

On July 22, 2011, the Murrays' attorney sent a letter on their behalf to Lane. The letter read:

> "Rob Murray has been in to see me. He has told me that (1) he is a 5% shareholder of Miracorp; (2) no meetings have ever been held; (3) no distributions have been made; and (4) many other things. Now he has seen Garmin using Miracorp's name and logo.
>
> "We are not yet making a formal demand for inspection pursuant to Kansas law, but reserve the right to do so. If you and the company have a lawyer I suggest you have him or her call me so that we can try to resolve matters as easily as possible.
>
> "If nobody calls me by the close of business on Friday, July 29th, I shall assume the worst and act accordingly."

Neither Lane nor anyone else at Miracorp responded. The uncontroverted facts do not show that the Murrays sent any more communications to Miracorp. (As an aside, the panel majority also referenced two more letters the Murrays sent Miracorp in August 2011. *Miracorp, Inc.*, 2023 WL 176652, at *2, *7-8. But the Murrays did not present these letters until after the district court entered summary judgment, and in denying their Motion to Amend, the district court noted that it had "limited its analysis to the matters

4

that were before the court on Summary Judgment." Thus, because these other letters lie beyond the scope of the uncontroverted facts on summary judgment, they form no part of our decision.)

In 2012, Robert went to Miracorp's office to try to meet with Lane but was unable to. The parties dispute whether Robert ever tried to contact Lane about the value of his shares or tried to otherwise complain. In any event, the Murrays focused on Robert's declining health from 2012 to 2015.

On October 13, 2016, the Murrays' attorney sent Lane a letter demanding an inspection of Miracorp's books. Among other things, the letter said:

> "As a stockholder in the Company, Mr. Murray has the right to information relating to (i) litigation involving the Company; (ii) the financial condition of the Company; (iii) the use of assets of the Company (including cash reserves and/or insurance proceeds) to satisfy judgments against the same; and (iv) possible mismanagement of the Company."

The letter also noted the judgment paid by Miracorp in one of the lawsuits on November 11, 2011.

On October 25, 2016, the Murrays filed a shareholder inspection lawsuit against Miracorp under K.S.A. 17-6510(c). Among the other grounds listed, the lawsuit alleged that Miracorp did not disclose the settlement that concluded one of the 2011 lawsuits and did not describe how the attorney fees and expenses for that defense were paid. The district court ordered that the Murrays should receive a shareholder inspection under K.S.A. 17-6510(b). Miracorp produced various documents for the Murrays to inspect, and on August 9, 2018, the district court entered an order terminating the inspection case.

5

*District Court Proceedings*

The Murrays' first Petition, filed on February 7, 2019, alleged claims of breach of fiduciary duty, conversion, accounting, and fraud by silence. In their Fourth Amended Petition, filed March 31, 2021, they set forth eight theories for relief: (1) breach of fiduciary duties, (2) unjust enrichment, 3) breach of implied contract, (4) conversion, (5) fraud, (6) an action for declaratory judgment, (7) an action for an accounting, and (8) misappropriation of trade secrets.

Miracorp moved for summary judgment, claiming that the Murrays' claims were barred by the statute of limitations or res judicata, among other arguments. Miracorp focused its statute of limitations arguments on the Murrays' failure to sue in the years following 2011, claiming that they had all the relevant knowledge as of the July 22, 2011 letter. The Murrays responded to Miracorp's motion and filed their own motion for summary judgment.

At a hearing on the motions—and later in a written order—the district court granted summary judgment to Miracorp on all eight of the Murrays' claims. In reaching this decision, the district court set forth these findings of uncontroverted fact:

"1.    Plaintiffs Googled the judgments and information related to the lawsuits in 2016.

"2.    In their affidavit, Defs. MSJ Ex. 13, Plaintiffs stated that sometime in 2011 they learned that Garmin was using Miracorp's name and logo.

"3.    On or about July 22, 2011, as shown in Defs. MSJ Ex. 15, Plaintiffs had a knowledge that there hadn't been any distributions and confirmed they had seen Garmin using the Miracorp name and logo.

"4.     In the same letter dated July 22, 2011 (Defs. MSJ Ex. 15), the Plaintiffs' attorneys also wanted to discuss with Lane Goebel 'many other things.'

"5.     These 'many other things' followed the two specific subsections of events regarding Miracorp, Inc., such as no distributions. Id. It is also a finding of fact and undisputed in the record that the Plaintiffs never received a response from Defendants to the letter dated July 22, 2011 (Defs. MSJ Ex. 15).

"6.     In a letter dated October 13, 2016, Defs. MSJ Ex. 21, the Plaintiffs' attorney sent a demand letter to Lane Goebel which demonstrates the Plaintiffs' actual knowledge of the sexual harassment lawsuits and an attempt to investigate the matters.

"7.     It is undisputed that Miracorp, Inc. issued Schedule K-1 returns from 2010 to 2012 showed no additional ordinary business income and assets had been disposed for Miracorp.

"8.     Plaintiffs acknowledge there had been no meetings since the original agreement in 1989.

"9.     There is a potential dispute for one meeting in 2006.

"10.    The timing of the following alleged dates of actionable conduct, potentially actionable conduct is:

"a.     a jet was purchased in [2009]

"b.     The two lawsuits filed against Defendants in 2008, 2009 were finalized in 2011.

"c.     There was an enormous jump in the rent in 2011.

7

"d.     The most recent alleged actionable conduct was the Chapter 11 bankruptcy proceedings in 2015 of All Freight, and there is no other actionable act alleged after that.

"11.    Plaintiffs had knowledge of never receiving a financial statement even though listed as a treasurer in the filings for almost 20 years."

The district court then concluded that "All of the alleged acts, with the exception of maybe the All Freight bankruptcy in 2015, were reasonably ascertainable by July of 2011." The court focused on "the knowledge of the lawsuits in 2011, which is part of Ms. Murray's affidavit, the belief that there were problems [with] the company and no distributions, no meetings, [and] the change in information on the tax forms" in finding that the Murrays' duty to investigate was "triggered . . . back in 2011." The court also reasoned that the Murrays' shareholder inspection case "could" have been filed in 2011 and so the Murrays' claims were time-barred.

The Murrays moved to amend the judgment, arguing that fraudulent concealment tolled the applicable statutes of limitations and claiming that several genuine disputes of material fact precluded judgment. The district court denied the motion, and the Murrays appealed.

*Appellate Proceedings*

A majority of the Court of Appeals panel affirmed. *Miracorp, Inc.*, 2023 WL 176652, at *1. The majority first addressed the Murrays' five claims subject to a two-year statute of limitations. Because K.S.A. 60-513(b) provides that this period of limitations "shall not commence until the fact of injury becomes reasonably ascertainable to the

8

injured party," the majority focused on when the Murrays' injuries became reasonably ascertainable. 2023 WL 176652, at *4. Based on *Foxfield Villa Assocs. v. Robben*, 57 Kan. App. 2d 122, 127, 449 P.3d 1210 (2019), *rev. denied* 311 Kan. 1045 (2020), the majority framed this analysis around when the Murrays had "'a duty to reasonably investigate available sources containing facts relevant to the party's claim.'" 2023 WL 176652, at *5. Although the majority acknowledged that the Murrays had a "reduced duty to investigate" because Lane was their fiduciary, it held that "if the Murrays were aware of something that put them 'on inquiry' of suspected wrongdoing then the law would not protect their continued reliance on Lane's and Miracorp's statements." 2023 WL 176652, at *5-6. Because the majority concluded the Murrays "knew that all was not as it seemed" in 2011—"when the Murrays learned that Garmin was using Miracorp's name and logo"—it held that the statute of limitations for all five claims began to run then. 2023 WL 176652, at *7-10. Among its other conclusions, the majority wrote:

> "If the Murrays had chosen to continue to pursue their suspicions in 2011, they could have inspected Miracorp's books and records—as they stated they intended to do— and *likely would have learned about many, if not all, of their current complaints*. At the very least it would have given them enough information to realize that they needed to conduct further investigation." (Emphasis added). *Miracorp, Inc.*, 2023 WL 176652, at *7.

The majority extended this reasoning to the first of the misappropriation of trade secrets claims, one of the claims subject to a three-year statute of limitations. *Miracorp, Inc.*, 2023 WL 176652, at *10. See K.S.A. 60-3325 ("An action for misappropriation must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered."). The majority also quickly disposed of the breach of implied contract claim, because—unlike the other claims—K.S.A. 60-512 lacks a "reasonably ascertainable provision," making the claim

9

time-barred regardless of when the Murrays' injury was reasonably ascertainable. 2023 WL 176652, at *10-11. Finally, the parties failed to address the Murrays' claim for an accounting, so the majority deemed it waived. 2023 WL 176652, at *11.

Judge Hurst dissented. While she agreed with the majority's holdings about the implied breach of contract and accounting claims, she argued that questions of fact remained about the reasonable ascertainability of the Murrays' injury. *Miracorp, Inc.*, 2023 WL 176652, at *13-14 (Hurst, J., dissenting). Specifically:

> "In 2011, the Murrays may have done what a reasonable minority shareholder in their position would have done—hired an attorney to obtain the relevant information from Miracorp—and nevertheless were unable to ascertain their injuries. Therefore, the trier of fact could determine that the Murrays' injuries were not reasonably ascertainable in 2011 and, by extension, that the statute of limitations did not begin to run until a later date. This is particularly relevant given the Murrays' reduced burden to investigate because the defendants owed them a fiduciary duty. Additionally, whether defendants acted intentionally to conceal their wrongdoing, and thus tolling or negating the statute of limitations is a question of fact. To toll the applicable statute of limitations, the defendants' 'concealment must be fraudulent or intentional.' The parties obviously dispute whether the defendants intentionally concealed their wrongdoing. [Citations omitted.]" 2023 WL 176652, at *13 (Hurst, J., dissenting).

The Murrays petitioned this court for review, which we granted.

ANALYSIS

The Murrays raise several challenges to the panel majority's decision, including several asserted issues of first impression. But our ultimate inquiry is much simpler: in light of the uncontroverted facts, is there a genuine dispute of material fact as to whether

10

the Murrays reasonably investigated their suspicions in 2011? Because we hold that the uncontroverted facts do not show that the Murrays' efforts were reasonable, we affirm the district court and the panel majority's conclusion that the Murrays' claims are barred because they waited too long to file their lawsuit.

*Standard of Review*

An appellate court reviews a district court's summary judgment order de novo:

"'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.'" *Fairfax Portfolio v. Carojoto*, 312 Kan. 92, 94-95, 472 P.3d 53 (2020) (quoting *Hansford v. Silver Lake Heights*, 294 Kan. 707, 710-11, 280 P.3d 756 [2012]).

The Murrays' arguments also require the interpretation of Kansas precedent and statutes, which we review de novo. E.g., *In re Wrongful Conviction of Bell*, 317 Kan. 334, 337, 529 P.3d 153 (2023); *Scott v. Hughes*, 294 Kan. 403, 412, 275 P.3d 890 (2012).

11

*Discussion*

Of the Murrays' eight claims, we begin by summarily affirming the panel's unanimous conclusion that the breach of implied contract claim was time-barred—since K.S.A. 60-512, which governs this claim, lacks any "reasonably ascertainable" language—and that the Murrays waived their accounting claim. *Miracorp, Inc.*, 2023 WL 176652, at *10-11; 2023 WL 176652, at *14 (Hurst, J., dissenting) (agreeing with the majority on both counts). The Murrays challenge neither conclusion on review, and so the panel's decision on these points stands.

This leaves us with the Murrays' five claims governed by K.S.A. 60-513(a) and (b)'s two-year statute of limitations—breach of fiduciary duties, unjust enrichment, conversion, fraud, and an action for declaratory judgment—and their misappropriation of trade secrets claim, which is subject to a three-year statute of limitations under K.S.A. 60-3325. Although the latter statute uses slightly different language than K.S.A. 60-513(b)— "reasonable diligence" rather than "reasonably ascertainable"—our inquiry is essentially the same. A review of the Murrays' Fourth Amended Petition reveals that the underlying acts involved in all six claims occurred, at the latest, by the end of 2012.

Under K.S.A. 60-513(b), the statute of limitations provided in K.S.A. 60-513(a) only begins to run once an injury becomes "reasonably ascertainable" to the injured party—which is not necessarily when the party has actual knowledge of the injury. E.g., *Davidson v. Denning*, 259 Kan. 659, 678, 914 P.2d 936 (1996). "The phrase 'reasonably ascertainable' means that a plaintiff has the obligation to reasonably investigate available sources that contain the facts of the" injury and its causation. *Denning*, 259 Kan. at 678-79. In determining whether an investigation was reasonable, the court considers reliable sources contemporaneously and reasonably available to the injured party that would have

12

provided him information about the injury and its causation. Moreover, "fraud and fraudulent concealment can toll a statute of limitations" if the "'concealment [is] fraudulent or intentional and, in the absence of a fiduciary or confidential relationship, there [is] something of an affirmative nature designed to prevent, and which does prevent, discovery of the cause of action.'" *Robben*, 57 Kan. App. 2d at 130. Further, "objective knowledge of the injury, not the extent of the injury, triggers the statute" of limitations. *P.W.P. v. L.S.*, 266 Kan. 417, 425, 969 P.2d 896 (1998). Thus, there are "two inquiries relevant to determining when the statute of limitations . . . began to run:  (1) When did the [plaintiffs] suffer an actionable injury—i.e., when were all the elements of the cause of action in place? and (2) When did the existence of that injury become reasonably ascertainable to them?" *LCL v. Falen*, 308 Kan. 573, 583, 422 P.3d 1166 (2018).

In *Armstrong v. Bromley Quarry & Asphalt, Inc.*, 305 Kan. 16, 378 P.3d 1090 (2016), the court explored the concept of reasonable investigation in the context of summary judgment. *Armstrong* centered on tortious conduct related to subterranean limestone mining on the property of landowners—conduct which, like Miracorp's activity here, would not have been immediately apparent to the plaintiffs "without more." *Armstrong*, 305 Kan. at 28. In *Armstrong*, that "something more must have been the house shaking that Armstrong discerned to be from blasting somewhere on the property and the suspicions of unauthorized mining based on previous business dealings with Bromley Quarry." 305 Kan. at 28.

But as the court clarified, the "ground shaking"—to borrow the same metaphor ultimately applied by the district court here—only triggers "an obligation to investigate." *Armstrong*, 305 Kan. at 29. The focus then turns to what, if anything, a potentially aggrieved party does next "to ascertain the fact of this injury." 305 Kan. at 29. In

13

*Armstrong*, the landowner took additional steps by obtaining maps from the regulatory agencies, "some of which Bromley Quarry had prepared. Without exception, those maps incorrectly showed there had been no mining on the Armstrong property." 305 Kan. at 29. And in response to Bromley Quarry's assertion that the landowner should have done even more, the *Armstrong* court asked, "But what would cause a reasonably prudent landowner to take this additional action under the circumstances—after reviewing maps on file with regulatory agencies that showed no mining had occurred on his or her property?" 305 Kan. at 29.

The district court here also considered "when the ground began to shake," thus triggering the need for additional investigation by the Murrays. The district court concluded that, between the changes on the K-1 forms, the knowledge that Garmin was using Miracorp's name and logo, and the knowledge that there had never been any distributions or shareholder meetings, the facts of the Murrays' injuries would have been reasonably ascertainable by July 2011—when the Murrays sent their unanswered letter to Miracorp. The district court thus held that the Murrays' claims were time-barred.

The panel majority agreed, focusing on the July 22, 2011 letter the Murrays sent to Miracorp. 2023 WL 176652, at *7. The majority reasoned that:

> "If the Murrays had chosen to continue to pursue their suspicions in 2011, they could have inspected Miracorp's books and records—as they stated they intended to do— and likely would have learned about many, if not all, of their current complaints. At the very least it would have given them enough information to realize that they needed to conduct further investigation. The Murrays complain on appeal that Lane is a 'master of deceit and concealment,' but in 2011, when they first had suspicions that something was not right at Miracorp they took initial steps to investigate those suspicions. But they dropped their search, understandably, in favor of focusing on Robert's health. That does

14

not change the fact that they were suspicious, if not outright aware, that Lane and Miracorp were not behaving as they should." *Miracorp, Inc.*, 2023 WL 176652, at *7.

The majority noted that the Murrays next acted in 2016, when Tracey Murray learned that Miracorp and Goebel had been sued and paid out a large judgment. *Miracorp, Inc.*, 2023 WL 176652, at *7. This discovery prompted the Murrays to file a shareholder inspection lawsuit, which they ultimately prevailed on. After Miracorp provided documents, the Murrays filed this case—but by that point, the panel held, the Murrays' claims were already time-barred. 2023 WL 176652, at *8.

Broadly, we agree. But before turning to the substance of our agreement with the lower courts, we first pause to clarify several matters. First, we note that the district court erred by suggesting that the Murrays knew of the sexual harassment lawsuits against Miracorp in 2011, which the uncontroverted facts do not support. Second, although the uncontroverted facts do not reveal when the Murrays *received* their 2011 and 2012 K-1 forms, the copies of those documents attached to Miracorp's Motion for Summary Judgment suggest that Miracorp sent the 2011 K-1 form sometime around March 13, 2012, and the 2012 K-1 form around August 27, 2013. Third, although the panel referenced two additional letters the Murrays sent in July and August 2011 as further proof that the Murrays should have done more, these letters—as noted above—were not presented as part of the uncontroverted facts on summary judgment, and thus cannot impact either the district court's decision or our review of that decision. Finally, the parties' assertions presented on summary judgment suggest that there may be a dispute of fact as to whether Robert Murray tried to follow up the July 2011 letter by visiting Miracorp's office or trying to contact Lane sometime in 2012—but, in either case, Robert could not speak with him.

15

But none of this alters our conclusion. By July 2011, the Murrays knew that Garmin was using Miracorp's name and logo. They also knew that they had never received any payments from Miracorp and that there had never been any shareholder meetings. Through the 1989 agreement included as part of the record, the Murrays *also* knew that Robert Murray was, at least on paper, Miracorp's secretary and the stockholder of a 5% stake in the company. As such, Robert had the right to make good on his July 22, 2011 insinuation that he would file a stockholder inspection lawsuit under Kansas law if Miracorp failed to work things out. Though it is controverted that Murray was ever an officer of the company, the results of the Murrays' 2016 inspection lawsuit proved the Murrays could have prevailed on such a lawsuit earlier and, thereby, discovered the true extent of their injury. See K.S.A. 2022 Supp. 17-6510(c). Indeed, had the Murrays taken any additional investigatory steps, we could consider the reasonableness of those steps. But the Murrays did nothing until they filed their 2016 inspection lawsuit, which we hold to be unreasonable even in light of the admittedly limited information available to them.

Even if we held that the Murrays' suspicions in July 2011 did not trigger their duty to reasonably investigate—and thus serve as the bedrock date of reasonable ascertainability—the subsequent 2011 and 2012 K-1 statements only added to the mounting evidence that something was rotten in Miracorp. As noted, the 2012 K-1 was dated August 27, 2013. The Murrays did not file their shareholder inspection lawsuit until October 25, 2016, more than three years later. By then, under any set of facts, their investigation was too late.

The Murrays rightly point out that Goebel and Miracorp owed them fiduciary duties, and they highlight precedent suggesting that a party's duty to reasonably investigate a potential injury is lessened in the presence of a fiduciary duty. *Wolf v. Brungardt*, 215 Kan. 272, 284, 524 P.2d 726 (1974). And, as noted, intentional or

fraudulent concealment *can* toll the statute of limitations. *Robben*, 57 Kan. App. 2d at 130. But even assuming fraud on Miracorp's part and granting that the Murrays had a "reduced" duty to investigate because of the fiduciary relationship, the Murrays still did *nothing* to investigate their suspicions between July 2011 and October 2016—except, arguably, by trying and failing to contact Lane sometime in 2012, and then failing to follow up. They still did nothing after they received the 2011 and 2012 K-1 forms, which showed unusual changes in Miracorp's business—such as the disposition of assets or the transition from ordinary business income to royalties as the sole source of income. However "reduced" the Murrays' duty to investigate may have been, that duty was not reduced to *nothing*—which is what the uncontroverted facts showed they did between the end of 2012 and October 2016.

The Murrays also complain that, even if some of their injuries were reasonably ascertainable in 2011, not *all* of them were. But we agree with the panel's assessment of this argument: the Murrays' claims were closely related, and thus "each of the causes of action discussed above could have been discovered by the Murrays through a books and records inspection." *Miracorp, Inc.*, 2023 WL 176652, at *9. And even if all their injuries were not reasonably ascertainable in July 2011—when their knowledge of Garmin using Miracorp's logo first aroused their suspicions—they would have been, at the latest, by the time they received the 2012 K-1 statement at the end of August 2013.

The Murrays argue that they had no duty to investigate "unavailable" sources, such as corporate records guarded by Miracorp. We need not speculate about what the Murrays should have done, although—as noted—their successful prosecution of a shareholder inspection lawsuit in 2016 suggests that they *could* have filed a similar lawsuit earlier. The point is that the Murrays did nothing besides possibly—accepting for the sake of argument—Robert's attempt to speak with Lane in 2012, which he failed to

17

follow up on. Whatever the Murrays *should* have done to investigate their suspicions, their failure to do *anything* until October 2016 renders the ultimate lawsuit untimely.

We acknowledge Judge Hurst's concern that the uncontroverted facts, as of now, are too speculative to permit summary judgment on behalf of Miracorp. *Miracorp, Inc.*, 2023 WL 176652, at *13 (Hurst, J., dissenting) ("It is possible that in 2011 the Murrays could have reasonably done more to investigate whether they had suffered an injury, and that such reasonable investigation would have demonstrated the injury. However, it may also be possible that such additional investigation would not have disclosed the injury."). But we reiterate that our concern lies not with specific actions the Murrays *should* have taken, but rather with the Murrays' failure to do *anything* to investigate their suspicions.

In *Armstrong*, we highlighted a concern about whether a possible investigatory approach "would have been possible, practical, or effective." 305 Kan. at 29. But here, we know the Murrays could have prevailed on a shareholder inspection lawsuit under K.S.A. 17-6510 at any relevant time, given their demonstrated success in maintaining such an action in 2016. And even if the records Miracorp produced under any such lawsuit did not reveal the wrongful conduct—for instance, as Judge Hurst noted, it is possible that Lane and Miracorp could have fraudulently concealed the records—at least then the *Murrays* might have satisfied their duty to reasonably investigate and the statute of limitations would be tolled by any such fraud. Cf. *Armstrong*, 305 Kan. at 29 (landowner obtained survey maps from regulatory agencies, but never obtained his own survey; the limited factual record precluded summary judgment about whether he should have done more). But what was *not* reasonable, as a matter of law, was what the Murrays did:  nothing.

18

Thus, despite the factual uncertainties that linger, the district court correctly granted summary judgment to Miracorp, and the panel majority correctly affirmed the district court.

CONCLUSION

Because the Murrays acted too late on their suspicion, the applicable statutes of limitation bar all six of their remaining claims. We thus affirm the decision of the panel majority and the district court.

Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

BILES, J., concurs in the result.

\* \* \*

WALL, J., concurring in part and concurring in the judgment: I join the majority's decision to affirm the panel's unanimous conclusion that the Murrays' breach-of-implied-contract claim was time-barred and that the Murrays waived their accounting claim. I also agree that the applicable statutes of limitations bar the Murrays' six remaining claims. But I write separately because I believe the majority's statute-of-limitations rationale is flawed.

The Murrays' remaining claims are for breach of fiduciary duties, unjust enrichment, conversion, fraud, a declaratory judgment about Lane Goebel's personal

19

liability, and the misappropriation of trade secrets. Those claims are based on conduct that happened before 2012.

Under the applicable statutes of limitations, the Murrays needed to bring their action within two years, except for the misappropriation-of-trade-secrets claim which had to be brought within three years. See K.S.A. 60-513 (two-year limit for bringing breach-of-fiduciary-duties, unjust-enrichment, conversion, fraud, and declaratory-judgment actions); K.S.A. 60-3325 (three-year limit for bringing a misappropriation-of-trade-secrets claim). The two-year time limit began to run when the injury became "reasonably ascertainable to the injured party." K.S.A. 60-513(b). And the three-year time limit began to run when the injury "should have been discovered" by using "reasonable diligence." K.S.A. 60-3325.

The majority focuses on when the alleged injuries were reasonably ascertainable to Robert Murray based on his status as a Miracorp shareholder—a fact the Murrays established at the summary-judgment stage by pointing to a 1989 agreement giving him a 5% stake in the corporation. The majority believes the injuries became reasonably ascertainable in 2011 when Robert first began to have suspicions about Miracorp's operations. For the majority, those suspicions triggered a duty to investigate. And as a shareholder, Robert could have brought a shareholder-inspection lawsuit to examine the corporate books. See K.S.A. 17-6510(b)(1). Had he taken that step, the majority assumes the Murrays would have discovered the alleged wrongdoing, as they did when they successfully brought an inspection action in 2016. Thus, the majority concludes that the statutes of limitations expired long before this action was filed in 2019.

In my view, the majority's reliance on Robert's duty as a shareholder to investigate is, at best, beside the point. At worst, it is erroneous. For one, "'Kansas imposes a very

strict fiduciary duty on officers and directors of a corporation to act in the best interests of the corporation and its stockholders.'" *Burcham v. Unison Bancorp, Inc.*, 276 Kan. 393, 416, 77 P.3d 130 (2003) (quoting *Miller v. Foulston, Siefkin, Powers & Eberhardt*, 246 Kan. 450, 467, 790 P.2d 404 [1990]). So, in such a fiduciary relationship, we have long recognized that the beneficiaries (shareholders) have a diminished duty to inspect and discover corporate wrongdoing—we trust officers and directors, who have direct access to and control over the corporation, to fulfill their fiduciary duties. See *Wolf v. Brungardt*, 215 Kan. 272, 284, 524 P.2d 726 (1974) (party who depends on trustee in fiduciary relationship has a "reduced" "duty of due diligence to discover the true facts"). Based on the summary judgment record here, it is not clear to me that a shareholder's diminished duty of inspection would have been triggered in 2011 as a matter of law.

However, the 1989 agreement the Murrays rely on to establish Robert's shareholder status did more than give him a 5% stake in Miracorp—it also made him a corporate officer, the secretary. As an officer of Miracorp, Kansas law charges Robert with "'knowledge of . . . the financial condition of the corporation'" and "'of facts which the corporate books and records disclose.'" *Weigand v. Union Nat'l Bank of Wichita*, 227 Kan. 747, 756, 610 P.2d 572 (1980) (quoting *Noll v. Boyle*, 140 Kan. 252, 255, 36 P.2d 330 [1934]). This rule is grounded in logic and reason. As noted, officers and directors are charged with very strict fiduciary duties. To fulfill these duties, officers and directors must remain actively involved in the affairs of the corporation. If an officer or director chooses to ignore these obligations, the law charges them with knowledge and holds them accountable for failing to discharge their duties. See *Burcham*, 276 Kan. at 416.

Thus, the Murrays' injuries were not reasonably ascertainable because Robert was a shareholder who could have filed an inspection action in 2011. Instead, the injuries were reasonably ascertainable (thereby triggering the statutory time limits to sue) because

21

Robert was a corporate officer charged with knowledge of Miracorp's financial affairs, including the transfer of Miracorp's assets to NTTS in 2011. See *Weigand*, 227 Kan. at 754 ("As an officer of the corporation he is charged with knowledge of that plan."). Thus, the statutory period to bring this action began when the alleged misconduct occurred in 2011 and expired well before the Murrays filed this lawsuit in 2019. Their claims are therefore barred by the applicable statutes of limitations.

On summary judgment, the Murrays attempted to minimize Robert's status as an officer of Miracorp, claiming he was either unaware of his status or did not genuinely act in that official capacity. But the Murrays cannot rely on a contract to assert Robert's rights as a shareholder while ignoring his duties as an officer arising from the same legal instrument. Cf. *Weigand*, 227 Kan. at 754 (knowledge an individual is charged with in their capacity as corporate officer is likewise charged to the individual personally as a shareholder).

True, the district court and Court of Appeals did not resolve summary judgment on this basis. Nor have the parties argued that we should resolve this dispute based on Robert's position as a corporate officer. Indeed, the Murrays cited the 1989 agreement only to establish that there is a jury question regarding Robert's status as a shareholder. But appellate courts regularly affirm lower court orders granting summary judgment as right for the wrong reasons. See, e.g., *Frick v. City of Salina*, 290 Kan. 869, 904-05, 235 P.3d 1211 (2010) ("Summary judgment was appropriate, therefore, although on different grounds than entered by the district court.").

And Supreme Court Rule 141(e) expressly authorizes courts to resolve summary judgment based on parts of the record that the parties have not cited. Supreme Court Rule 141(e) (2023 Kan. S. Ct. R. at 224) (When ruling on summary judgment, "[t]he court

22

need consider only the parts of the record that have been cited in the parties' briefs, but it may consider other materials in the record."); see *Acord v. Porter*, 58 Kan. App. 2d 747, 757, 475 P.3d 665 (2020). In fact, Rule 141(e) is identical to and was patterned after Federal Rules of Civil Procedure 56(c)(3), which was adopted to make clear that a "court may decide a motion for summary judgment" based on materials found during "an independent search of the record." Fed. R. Civ. Proc. 56(c)(3) advisory committee's note to 2010 amendment; see Report of the Supreme Court Rules Advisory Committee on Restyling of District Court Rules, comments on Rule 141. Thus, Rule 141 gave the parties sufficient notice that their claims could be resolved on *any* facts included in the summary judgment record, even if they chose not to cite those facts. I would exercise the discretion afforded to us under Rule 141(e).

In Kansas, corporate officers owe "a very strict fiduciary duty" to their stockholders. *Becker v. Knoll*, 291 Kan. 204, Syl. ¶ 3, 208, 239 P.3d 830 (2010). To fulfill that duty, officers must remain involved in the affairs of the company. For those—like Robert Murray—who do not, the law charges them with knowledge of the corporation's affairs. As a result, the Murrays should have known of their injuries when the alleged misconduct occurred in 2011. And the statutes of limitations bar the Murrays' suit filed in 2019. I would therefore affirm the panel majority's opinion as right for the wrong reason.

STEGALL, J., joins the foregoing concurring opinion.